



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC TAYLOR and ERIC TAYLOR
as Next Friend for ERIC TAYLOR, JR.

Plaintiffs,

vs

Case No. 01-72626
Hon. George Caram Steeh
Magistrate Judge Scheer

CITY OF DETROIT, a Municipal Corporation, DETROIT POLICE LIEUTENANT PETERSEN, in his Individual and Official Capacity, DETROIT POLICE OFFICER TAGGERT, in his Individual and Official Capacity, DETROIT POLICE OFFICER JOHN ROE, in his Individual and Official Capacity,



Defendants.

---

ROBINSON RUSSELL, P.C.
DAVID A ROBINSON P38754
Attorneys for Plaintiffs
28145 Greenfield, Suite 100
Southfield, MI 48076
(248) 423-4234

CORNELIUS PITTS P18930
Co-Counsel for Plaintiffs
3650 Penobscot Building
Detroit, MI 48226
(313) 964-0066

LEWIS & MUNDAY P.C.
DAVID N. ZACKS P34192
DARICE E. WEBER P54084
Attorneys for Lieutenant Petersen
1300 First National Building
660 Woodward Avenue
Detroit, MI 49226
(313) 961-2550

CITY OF DETROIT LAW DEPARTMENT
LESLIE D. COOPER P30857
Attorney for Defendant City of Detroit
1650 First National Building
660 Woodward Avenue
Detroit, MI 48226
(313) 237-3019

---

# NOTICE OF HEARING

K:\DOCS\LIT\COOPL\A37000\MOT\CAN1772.WPD

48

To: Clerk of the Court
David A. Robinson
Cornelius Pitts
David N. Zacks
Darice E. Weber

**PLEASE TAKE NOTICE** that Defendant City of Detroit's Motion for Summary Judgment will be brought on for hearing before the Honorable George Caram Steeh at a date and time to be determined by the Court.

CITY OF DETROIT LAW DEPARTMENT

Leslie D. Cooper P30857
Attorney for Defendant City of Detroit
1650 First National Building
660 Woodward Avenue
Detroit, MI 48226
(313) 237-3019

Dated: July 8, 2002

The City of Detroit, through its undersigned attorney, moves this Court for an Oder granting Summary Judgment of Plaintiffs' claims against the City pursuant to Fed. R. Civ. P. 56 and says:

1. As shown in the attached brief, the plaintiffs can present no evidence in support of an essential element of the claims against Defendant, City of Detroit, arising under the United States Constitution, namely, that constitutionally protected rights were violated pursuant to a municipal policy or custom.

2. As is shown in the attached brief, there is no genuine issue of material fact and the defendant is entitled to judgment as a matter of law.

WHEREFORE, Defendant, City of Detroit, respectfully requests its Motion for Summary Judgment be granted.

Respectfully Submitted,

CITY OF DETROIT LAW DEPARTMENT

Leslie D. Cooper P30857
Attorney for Defendant City of Detroit
660 Woodward Avenue
1650 First National Building
Detroit, MI 48226
(313) 237-3019

Dated: July 8, 2002

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC TAYLOR and ERIC TAYLOR
as Next Friend for ERIC TAYLOR, JR.

Plaintiffs,

vs

Case No. 01-72626
Hon. George Caram Steeh
Magistrate Judge Scheer

CITY OF DETROIT, a Municipal Corporation, DETROIT POLICE LIEUTENANT PETERSEN, in his Individual and Official Capacity, DETROIT POLICE OFFICER TAGGERT, in his Individual and Official Capacity, DETROIT POLICE OFFICER JOHN ROE, in his Individual and Official Capacity,

Defendants.

/

ROBINSON RUSSELL, P.C.
DAVID A ROBINSON P38754
Attorneys for Plaintiffs
28145 Greenfield, Suite 100
Southfield, MI 48076
(248) 423-4234

CORNELIUS PITTS P18930
Co-Counsel for Plaintiffs
3650 Penobscot Building
Detroit, MI 48226
(313) 964-0066

LEWIS & MUNDAY P.C.
DAVID N. ZACKS P34192
DARICE E. WEBER P54084
Attorneys for Lieutenant Petersen
1300 First National Building
660 Woodward Avenue
Detroit, MI 49226
(313) 961-2550

CITY OF DETROIT LAW DEPARTMENT
LESLIE D. COOPER P30857
Attorney for Defendant City of Detroit
1650 First National Building
660 Woodward Avenue
Detroit, MI 48226
(313) 237-3019

/

**DEFENDANT CITY OF DETROIT'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . i

INDEX OF AUTHORITIES . . . . . . . . . . ii

ISSUES PRESENTED . . . . . . . . . . vi

AUTHORITY . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . 8

I WHETHER PLAINTIFFS' CLAIMS AGAINST THE CITY OF DETROIT SHOULD BE DISMISSED WHERE PLAINTIFFS CANNOT SHOW THAT ANY MUNICIPAL POLICY WAS THE MOVING FORCE BEHIND THE ALLEGED WRONGFUL ARRESTS OF PLAINTIFFS . . . . . . . . . . 8

A. The Existence of a Constitutionally Offensive City Policy or Practice . . . . . . . . . . 8

CONCLUSION AND RELIEF REQUESTED . . . . . . . . . . 16

# INDEX OF AUTHORITIES

**CASES** **Page**

Albright v Oliver, 114 SCt 807 (1994) . . . . . . . . . . 9

Anderson v Liberty Lobby, 477 US 242, 106 S Ct 2505, 91 Led2d 202 (1986) . 2, 3, 13

Baker v McCollan, 443 US 137, 99 SCt 2689, 61 Led2d 443 (1979) . . . . . . . . . . 9

Benett v City of Slidell, 735 F2d 861 (5th Cir 1984) and 472 US 1016 (1985) . . . . . . . . . . 10

Board of the County Commisioners of Bryan County, Oklahoma v Jill Brown et. al., No 95-1100; 1997 Lexis 2793 (April 28, 1997) . . . . . . . . . . 6, 10, 11

Canton v Harris, 489 US 378 (1989) . . . . . . . . . . 6, 10, 11

Celotex Corp v Catrett, 477 US 317, 106 S Ct 2548, 91 Led2d 265 . . . . . . . . . . 2, 13

Chapman v City of Detroit, 808 F2d 459 (6th Cir 1986 . . . . . . . . . . 8

Estelle v Gamble, 429 US 97, 97 SCt 285, 50 LEd2d 251 (1976) . . . . . . . . . . 8

Farmer v Brennan, ___US ___, 114 SCt 1970 (1994) . . . . . . . . . . 10

Gentile v County of Suffolk, 129 FRD 435 (EDNY 1990), aff'd 926 F2d 142 (2nd Cir. 1991) . . . . . . . . . . 6, 11

Golyar v McCausland, 738 F.Supp.1090 (D. Mich. 1990) . . . . . . . . . . 8

Gonzales v Ysleta Independent School District, 996 F.2d 745 (5th Cir. 1993) . . . . . . . . . . 6, 11

Graham v Connor, 490 US 386, 109 SCt 1865, 104 LEd2d 443 (1989) . . . . . . . . . . 9

Hershman v Sierra Pacific Power Co, 434 F Supp 46 (D Nv 1977) . . . . . . . . . . 1

Hullett v Smiedendorf, 52 F Supp 2d 817 (WD Mich 1999) . . . . . . . . . . 10, 12

Inland Oil and Transport Co v United States, 600 F2d 725 (8th Cir 1979), cert den 444 US 991 . . . . . . . . . . 1

Jane Doe "A" v Special School District, 901 F2d 642 (8th Cir. 1990) . . . . . . . . . . . . . . 6

Jaroslawicz v Seedman, 528 F2d 727 (2d Cir 1975) . . . . . . . . . . . . . . . . . . . . . . . . . 1

Kauffman v Moss, 420 F2d 1270 (3rd Cir 1970) cert den,
400 US 846, 91 Sct 93, 27 LEd2d 84 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Keith v Highland Park School District, 800 FSupp 1470
(J.Edmunds, ED Mich 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Kline v City of Traverse City, 1999 US Dist Lexis 4655
(WD Mich, March 18 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Leach v Shelby County Sheriff, 891 F.2d 1241 (6th Cir 1989),
cert denied, 495 US 932 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Llewellen v Metro Government of Nashville, 34 F3d 345 (6th Cir 1994) . . . . . . . . . . . 9

Lopez v Houston Independent School District,
871 F2d 351 (5th Cir 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Lozo v Lynch, 625 FSupp 850 (D Conn 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Matney v First Protection Life Ins Co, 73 FRD 696 (WD Va 1977) . . . . . . . . . . . . . . . . 1

Matsushita Electric Industrial Co, Ltd. v Zenith Radio Corp, 475 US 574,
106 S Ct 1348, 89 Led2d 538 (1986 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 13

Meredith v Hardy, 554 F2d 764 (5th Cir 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Mintz v Mathers Fund Inc, 463 F2d 495 (7th Cir 1972) . . . . . . . . . . . . . . . . . . . . . . . . 3

Monell v Department of Social Services, 436 US 685; 98 S Ct 2018;
56 LEd2d 611 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9-11

Negrich v Hohn, 379 F2d 213 (3rd Cir 1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Northwestern National Insurance Co v Corley,
503 F2d 224 (7th Cir 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Nuclear Transportation & Storage v United States,
980 F2d 1348 (6th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Oklahoma v Jill Brown et. al., No 95-1100; 1997 Lexis 2793
(April 28, 1997)., 454 U.S. 312 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Oklahoma v Tuttle, 471 US 808 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12

Patterson v City of Cleveland, 173 F3d 429 (6th Cir 1999) . . . . . . . . . . . . . . . . . . . . . 10

Pembauer v Cincinnati, 475 US 469 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10, 12

Place v Sheppard, 446 F2d 1239 (6th Cir 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Polk v County of Dodson, 454 US 312 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Quinn v Syracuse Model Neighborhood Corp, 613 F2 438 (2d Cir 1980) . . . . . . . . 1, 3

Ross v Meagan, 638 F2d 646 (3rd Cir 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Rotolo v Borough of Charleroi, et al, 532 F2d 920 (3rd Cir 1976) . . . . . . . . . . . . . . . . 9

Saucier v Katz, ___ US ___ (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Searcy v City of Dayton, 38 F3d 282 (6th Cir 1994) . . . . . . . . . . . . . . . . . . . . . . . . . 11

St. Louis v Praprotnik, 485 US 112 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Street v J.C. Bradford & Co., 886 F2d 1472 (6th Cir 1989) . . . . . . . . . . . . . . . . . 2, 3, 13

Thompson v Kierhafer, 71 FRD 115 (ED Wi 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . 1

United States v An Article of Food Consisting of 345/50 lb Bags,
622 F2d 768 (5th Cir 1980 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

United States v Diebold, 369 US 654, 88 SCt 993 (1962) . . . . . . . . . . . . . . . . . . . . . 2

Webster v Houston, 735 F2d 838 (5th Cir 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Wells v Brown, 891 F2d 591 (6th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**STATUES**

42 USC 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

FRCP 43(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FRCP 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-3, 13

FRCP 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FRCP 56(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**OTHER AUTHORITIES**

Childress, A New Era for Summary Judgments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Recent Shifts at the Supreme Court, 116 FRD 183 (1987) . . . . . . . . . . . . . . . . . . . . . 3

## ISSUES PRESENTED

**I. WHETHER PLAINTIFFS' CLAIMS AGAINST THE CITY OF DETROIT SHOULD BE DISMISSED WHERE PLAINTIFFS CANNOT SHOW THAT ANY MUNICIPAL POLICY WAS THE MOVING FORCE BEHIND THE ALLEGED WRONGFUL ARRESTS OF PLAINTIFFS**

| | |
|---|---|
| Plaintiffs Answer: | "No" |
| Defendants City of Detroit Answer: | "Yes" |
| Defendant Lt. Petersen Answers: | "Yes" |

## AUTHORITY

In accordance with FRCP 56, any party may move for summary judgement on the ground there is no genuine issue of fact and, as a consequence, judgment is proper as a matter of law. Summary judgment is designed to achieve a quick resolution of a dispute when there is no necessity for a trial on the facts.[1]

Various matters in addition to the pleadings may be considered in connection with an FRCP 56 summary judgment motion. Such matters may include affidavits,[2] depositions, answers to interrogatories, and admissions,[3] and oral testimony.[4]

In deciding an FRCP 56 motion, the court must concern itself solely with the existence of any genuine issue of material fact.[5] The court is required to view the pleadings, the supporting matters, and all reasonable inference drawn therefrom in the light most favorable to the non-moving party.[6]

---

[1] See, Quinn v Syracuse Model Neighborhood Corp, 613 F2 438 (2d Cir 1980); Hershman v Sierra Pacific Power Co, 434 F Supp 46 (D Nv 1977); Matney v First Protection Life Ins Co, 73 FRD 696 (WD Va 1977); Thompson v Kierhafer, 71 FRD 115 (ED Wi 1976).

[2] Supporting affidavits must be made on personal knowledge, set forth such facts as would be admissible in evidence, and show affirmatively that the affiant is competent to testify to the matters stated therein; see, FRCP 56(e).

[3] See, FRCP 56(c)

[4] See, FRCP 43(e).

[5] Jaroslawicz v Seedman, 528 F2d 727 (2d Cir 1975) (it is not the court's responsibility to weigh the evidence or judge the credibility of witnesses, and, in effect, try the case).

[6] Diebold v Civil Service Commission of St. Louis City, 611 F2d 697 (8th Cit 1979); Inland Oil and Transport Co v United States, 600 F2d 725 (8th Cir 1979), cert den 444 US 991

Additionally, all reasonable doubts regarding the existence of a genuine issue of material fact must be resolved in favor of the party opposing the motion.[7] Consequently, when the pleadings, the supporting matters, and reasonable inferences demonstrate a material factual dispute, summary judgment is inappropriate.[8]

Regardless, summary judgment is appropriate in any civil action in which there is no genuine issue as to any material fact. Under such circumstances, the moving party is entitled to judgment as a matter of law.

Not every issue of fact or conflicting inference, however, presents a genuine issue of material fact requiring denial of an FRCP 56 summary judgment motion.[9] The substantive law governing the case will determine what issues are material, and any heightened burden of proof required by the substantive law must be satisfied by the opposing party.[10]

The party opposing an FRCP 56 motion must also adduce more than a mere scintilla of affirmative evidence to establish a material factual dispute.[11] A simple

---

7 United States v An Article of Food Consisting of 345/50 lb Bags, 622 F2d 768 (5th Cir 1980).

8 Meredith v Hardy, 554 F2d 764 (5th Cir 1977); United States v Diebold, 369 US 654, 88 SCt 993 (1962).

9 Anderson v Liberty Lobby, 477 US 242, 106 S Ct 2505, 91 Led2d 202 (1986) at 2510.

10 Street v J.C. Bradford & Co., 886 F2d 1472 (6th Cir 1989) at 1479; Anderson v Liberty Lobby, supra at 2510.

11 Street v J.C. Bradford & Co., supra; Anderson v Liberty Lobby, Inc, supra; Celotex Corp v Catrett, 477 US 317, 106 S Ct 2548, 91 Led2d 265 (1986); Matsushita Electric Industrial Co, Ltd. v Zenith Radio Corp, 475 US 574, 106 S Ct 1348, 89 Led2d 538 (1986).

showing of some degree of metaphysical doubt regarding the material facts is insufficient.[12]

Consequently, the test determining the propriety of an FRCP 56 motion is the same as that for a directed verdict motion.[13] Specifically, where the record taken as a whole could not lead a rational trier of fact to find for the opposing party, there is no genuine issue for trial.[14]

While it has been referred to as extreme, drastic, or harsh, summary judgment may also be characterized as a wholesome, useful, or salutary procedural mechanism by which needless trials may be avoided.[15] Whatever the description, summary judgment may be entered when the moving party has established his or her right to judgment with such clarity as to leave no room for controversy.

---

12 Street v JC Bradford & Co., supra at 1480; Matsushita Electric Industrial Co v Zenith Radio Corp, supra at 1356.

13 Street v JC Bradford & Co, supra at 1479; Anderson v Liberty Lobby, supra at 2512.

14 Matsushita Electric Industrial Co, Ltd. v Zenith Radio Corp, supra at 1356.

15 Street v JC Bradford & Co, supra at 1480; See also, Childress, A New Era for Summary Judgments; Recent Shifts at the Supreme Court, 116 FRD 183 (1987); Quinn v Syracuse supra; Northwestern National Insurance Co v Corley, 503 F2d 224 (7th Cir 1974); Mintz v Mathers Fund Inc, 463 F2d 495 (7th Cir 1972).

**STATEMENT OF FACTS**

This case arises out of the arrest of plaintiff on August 17, 1999, while the police were executing a valid search warrant at plaintiff's house and found plaintiff trimming several large marijuana plants in his backyard, in plain view of the officers. While investigating the murder of Tracy Minella, Lt. Petersen obtained information from an information that the suspected (and subsequently convicted) murderer, Louis Sock, with whom plaintiff associated, had stored the decedent's body in the trunk of a red Camaro before burning the body's remains. The informant advised Lt. Petersen that the Camaro was subsequently moved to 18950 Pelkey, the home of plaintiff, Eric Taylor. Based on this and other information, Lt. Petersen obtained a search warrant for plaintiff's house. (See Search Warrant, attached as Exhibit H).

Lt. Petersen, Special Agent Potts and several officers from the tactical Services Squad went to plaintiff's house around 10:30 a.m. on August 17, 1999 to execute the search warrant. (See affidavit of Let. Petersen, attached as Exhibit F). When Lt. Petersen arrived, he observed plaintiff in his back yard, trimming his marijuana plants. (See Affidavit of Lt. Petersen attached as Exhibit F and photographs of the marijuana plants attached as Exhibit I). Consequently, plaintiff was arrested and conveyed downtown and narcotics officers were notified. (See Preliminary Complaint Records prepared by Officer Richard Novakowski, attached as Exhibit J, and Preliminary Complaint Records prepared by Sgt. Andrew White, attached as Exhibit K).

While executing the search warrant, officers found various other drug paraphernalia inside plaintiff's house, including a triple beam scale and a shotgun. (See Return to Search Warrant, attached as Exhibit L). A preliminary analysis of the

marijuana confirmed it was marijuana (See Request for Laboratory Service, attached as Exhibit M.) A subsequent laboratory analysis established the amount confiscated at 698 grams (See Laboratory Analysis, attached as Exhibit N).

While downtown, plaintiff was given the option of answering question from t. Petersen about the murder of Tracy Minella; this questioning did not affect plaintiff's status as a person arrested for narcotics. While Lt. Petersen was questioning plaintiff, narcotics officers were working on an "in-custody" warrant for plaintiff regarding the marijuana. (See Investigator's Report, attached as Exhibit B). The next morning, Lt. Petersen obtained a statement from plaintiff regarding his knowledge of the murder. (See Statement attached as Exhibit O).

Plaintiff admitted that he had worked on Sock's house on Hamburg to get it ready for renters and that he had smelled a decomposed boy in October 1998. (See Exhibit O.) Plaintiff admitted Sock had contacted him the day before he smelled the decomposed body and asked him to help "clean up" the Hamburg house. Plaintiff admitted that a person hired to clean up the Hamburg house told him that he had seen what appeared to be bones in a garbage can. Plaintiff admitted taking part in a conversation in which Sock's cohorts said they thought Sock had killed Tracy Minella and that Sock had asked for acid and fifty-five gallon drums. (See Exhibit O.) Plaintiff admitted learning from the renters at the Hamburg house that the Camaro had been moved and another car, a gray Cadillac, had been moved out of the garage. (See Exhibit O.)

Because plaintiff had cooperated in providing some helpful information about the murder and because he was not a suspect in the actual murder, it was decided that

plaintiff would be released pending issuance of a not-in-custody warrant for the narcotics charge. (See Affidavit of Lt. Petersen, attached as Exhibit F.)

On April 27, 2000, Sgt. White obtained a felony warrant for plaintiff's arrest for the delivery/manufacture of five to forty-five kilograms of marijuana. (See Warrant attached as Exhibit C). On June 7, 2000, plaintiff was arrested and arraigned on the outstanding warrant and a $5,000 personal bond was set. (See Felony Register of Actions, attached as Exhibit P).1 Lt. Petersen neither arrested plaintiff nor had any involvement in his arrest at this time. (See Affidavit of Lt. Petersen attached as Exhibit F.) Plaintiff subsequently waived the preliminary examination and was bound over to circuit court on the charge of manufacturing/delivering five to forty-five kilograms of marijuana.

On June 9, 2000, Lt. Petersen was promoted and transferred to the Twelfth Precinct. He turned over the investigation into the Tracy Minella murder over to Gerald Packard and Dave Wassmund of the Violent Crimes Task Force. Lt. Petersen had no further involvement with plaintiff.

On November 14, 2000, plaintiff entered a conditional guilty plea to a reduced charge of manufacturing less than twenty plants of marijuana, a four-year felony. *See November 14, 2000 Plea Transcript, attached as Exhibit E.) Plaintiff's previous Motion to Suppress had been denied by the trial court. (See Court's findings attached as Exhibit A). Plaintiff was sentenced to eighteen months probation. Although plaintiff reserved his right to challenge the trial court's denial of his motion to suppress the evidence premised on alleged deficiencies in the search warrant and accompanying affidavit, plaintiff failed to perfect his appeal as of right.

Instead, when it became clear that his guilty plea would bar his civil action, plaintiff filed a delayed application for leave to appear with the Michigan Court of Appeals on November 13, 2001, almost one year after entering his guilty plea. The delayed application was denied by the Court of Appeals for lack of merit on January 9, 2002. (See Order attached as Exhibit Q.) IN a last ditch attempt to save his civil case, plaintiff filed another delayed application for leave to appeal with the Michigan Supreme Court on February 20, 2002. The application remains pending.

Despite his guilty plea, plaintiff has inexplicably filed suit against the City of Detroit, Lt. Petersen and others alleging false arrest and false imprisonment (Count I, intentional infliction of emotional distress (Count II), abuse of process (Count III), malicious prosecution (Count IV), harmful or offensive touching (Count V), and constitutional violations (Count VI), (See Complaint, attached as Exhibit R.)

## ARGUMENT

### I WHETHER PLAINTIFFS' CLAIMS AGAINST THE CITY OF DETROIT SHOULD BE DISMISSED WHERE PLAINTIFFS CANNOT SHOW THAT ANY MUNICIPAL POLICY WAS THE MOVING FORCE BEHIND THE ALLEGED WRONGFUL ARRESTS OF PLAINTIFFS

In the instant matter, Plaintiffs allege in their Complaint that the City of Detroit is liable where it

> "...knew or should have known that procedures and policies, customs and practices of the defendants which are enumerated as follows were wholly defective:
>
> a. To adequately, properly, objectively and fairly investigate the use of coercion, threat and harassment by a member of the department In the course of a homicide investigation.
>
> b. In maintaining an express policy at Volume III, Chapter 9, Section 3.2 of the police manual to mandate that witnesses to a critical assault crime be detained and transported to the homicide section for questioning.
>
> c. Having a policy, practice and/or procedure that allows investigating officers to coerce by threat and intimidation a witness to a critical Assault by detention, arrest, restriction, false charges and other methods of unlawful behavior simply in order to crack the caper."

In all regards, Plaintiffs' claims are without merit where Plaintiff, Eric Taylor, was initially arrested for the manufacture/delivery of marijuana upon the officers' arrival at his address to serve a valid search warrant and his subsequent arrest was upon the existence of a valid warrant for his arrest on the narcotics charge.

#### A. The Existence of a Constitutionally Offensive City Policy or Practice

Plaintiff presents absolutely no genuine issue of material fact regarding whether a constitutionally infirm City policy or practice caused the alleged violation of Plaintiff's constitutional rights as reflected in Plaintiffs' Complaint.

Generally, a governmental agency, such as the City of Detroit, may be held liable for the violation of an individual's constitutionally protected rights, only when the agency, acting through the execution of its policies or practices directly inflicts the injury.[16]

Asserting the existence of a policy or practice alone, however, is insufficient to create liability; plaintiff must also demonstrate its unconstitutionality. Further, Plaintiffs must demonstrate the policy or practice was, in fact, the moving force behind Plaintiffs' claimed injury.[17]

In the instant matter, Plaintiffs allege they suffered damages as a direct result of a City policy or practice of arresting persons without probable cause. A failure to supervise or discipline claim cannot be supported absent a showing of a deliberately indifferent policy of failing to effect protective or corrective action regarding a widespread practice of constitutional violations, and an affirmative causal nexus

---

[16] Monell v Department of Social Services, 436 US 685; 98 S Ct 2018; 56 LEd2d 611 (1978); see also, Oklahoma v Tuttle, 471 US 808 (1985); St. Louis v Praprotnik, 485 US 112 (1988); Pembauer v Cincinnati, 475 US 469 (1986); Canton v Harris, 489 US 378 (1989).

[17] Gonzales v Ysleta Independent School District, 996 F.2d 745 (5th Cir. 1993) (where a policy in some sense causes, but does not compel, a constitutional violation, plaintiffs must establish the particular harm-producing deficiency "resulted from conscious choice"; they must establish the "policy makers deliberately chose (measures) which would prove inadequate"; before municipal liability may attach, plaintiffs must of evidence not simply of a decision, but a "decision by the city itself to violate the Constitution; inadequate, but constitutional policies and decisions rise to the same actionable plane only upon a showing they were enacted or reached with deliberate indifference to their possible unconstitutional consequences); Gentile v County of Suffolk, 129 FRD 435 (EDNY 1990), aff'd 926 F2d 142 (2nd Cir. 1991) (citing City of Canton v Harris, supra (a municipality can be liable under §1983 only where its policies are the "moving force behind the constitutional violation"); Monell v Department of Social Services, supra (Congress did not intend to impose liability on a municipality unless deliberate action attributable to the municipality itself is the "moving force"behind the Plaintiff's federal rights deprivation); Board of the County Commisioners of Bryan County, Oklahoma v Jill Brown et. al., No 95-1100; 1997 Lexis 2793 (April 28, 1997). Polk v County of Dodson, 454 US 312 (1981); Pembauer v Cincinnati, supra (municipal liability limited to action for which the municipality is actually responsible).

between the asserted policy and the constitutional deprivation alleged.[18] Plaintiffs, however, are able to demonstrate neither the existence of a constitutionally offensive City policy or custom regarding arresting witnesses absent probable cause nor a sufficient causal nexus between any such policy or custom and the damages alleged. To the contrary, the City's policies are well documented to require arrests based only on probable cause and to expressly forbid arrests of witnesses absent probable cause.

In this case, there can be no legitimate claim that probable cause did not exist for the arrest of Eric Taylor. To the contrary, he has plead guilty to the manufacture of marijuana under 20 plants and admitted having the marijuana plants on August 17, 1999, knowing it what it was and that there were at least six eight-foot plants constituting about 4500 grams or 10 pounds of marijuana. (Exhibit E, page 11).

On August 17, 1999, Lt. Petersen was present to properly serve a search warrant at Plaintiff's residence at 18950 Pelkey Street. The warrant sought evidence related to the homicide of Tracy Minella. While Plaintiff challenged the validity of this warrant during his criminal prosecution, the court found that there existed no reason to suppress the search warrant and denied Plaintiff's motion. (Exhibit A). As fully addressed by co-defendant Petersen's motion and brief, Plaintiff has not been successful in challenging the validity of the warrant on appeal. As of this time, the warrant has been found valid and there can be no legitimate claim that Plaintiff was arrested on anything other than probable cause. Thus, his claim that he was but a

---

[18] See e.g., Berry v City of Detroit, supra (deliberate indifference standard governing inadequate training extended to related claims of deficient supervision and discipline); Jane Doe "A" v Special School District, 901 F2d 642 (8th Cir. 1990); Leach v Shelby County Sheriff, 891 F.2d 1241 (6th Cir 1989), cert denied, 495 US 932 (1990).

witness and arrested pursuant to an alleged policy of the City of Detroit to arrest persons without probable cause must fail as a matter of law.

Plaintiffs have failed to produce any evidence of an improper policy mandating Plaintiff's arrest in this case. To the contrary, there was more than sufficient probable cause which is confirmed by Plaintiff's own admissions during his guilty plea.

Plaintiff's claims are presented in a wholly conclusory manner devoid of any meaningful particularized facts regarding the underlying policy or practice of which Plaintiff complains. Such conclusory allegations, however, are insufficient, especially when no particularized supporting facts are alleged, or when the allegations are contradicted by the facts themselves.[19]

It is not the court's role to guess the nature of plaintiffs' asserted claims,[20] and defendants should not have to speculate about the cause of action which is not evident on the face of the complaint.[21] A plaintiff seeking to impose constitutionally based liability upon a municipality is required to not merely allege in conclusory terms the existence of a wrongful policy, but also to set "forth facts showing the existence of the offending custom or policy".[22]

---

[19] Place v Sheppard, 446 F2d 1239 (6th Cir 1971) (Plaintiff's Complaint must present factual allegations; mere conclusions are insufficient); Golyar v McCausland, 738 F.Supp.1090 (D. Mich. 1990).

[20] Wells v Brown, 891 F2d 591 (6th Cir. 1989); Nuclear Transportation & Storage v United States, 980 F2d 1348 (6th Cir. 1989); Chapman v City of Detroit, 808 F2d 459 (6th Cir 1986).

[21] Estelle v Gamble, 429 US 97, 97 SCt 285, 50 LEd2d 251 (1976);

[22] Lozo v Lynch, 625 FSupp 850 (D Conn 1986).

It has been a long-standing requirement that a civil rights complaint contain a modicum of specificity, identifying the particular conduct of defendants that is alleged to have harmed the plaintiff.[23] This standard is necessary to weed out the frivolous and insubstantial cases at an early stage in the litigation, and still keep the doors of the federal courts open to legitimate claims.[24] Plaintiffs' conclusory allegations that an improper municipal policy exists are not born out by any admissible evidence developed in this litigation. Further, Plaintiffs are unable to prove that the alleged policy was the moving force behind their particular claim of damages and their claims against the City must be dismissed.

Plaintiff in the instant matter is without any source of proof, evidence, or otherwise admissible information evidencing any manner of constitutional impropriety originating with a City policy or practice.

As a threshold consideration, there must be some manner of constitutional/substantive federal law rights violation, [25] arising directly from the implementation of a formal or informal City policy or practice.[26]

---

[23] Ross v Meagan, 638 F2d 646 (3rd Cir 1981); Rotolo v Borough of Charleroi, et al, 532 F2d 920 (3rd Cir 1976); Negrich v Hohn, 379 F2d 213 (3rd Cir 1967).

[24] Kauffman v Moss, 420 F2d 1270 (3rd Cir 1970) cert den, 400 US 846, 91 Sct 93, 27 LEd2d 84 (1970).

[25] Saucier v Katz, ___ US ___ (2001); Graham v Connor, 490 US 386, 109 SCt 1865, 104 LEd2d 443 (1989); Baker v McCollan 443 US 137, 99 SCt 2689, 61 Led2d 443 (1979). See also, Albright v Oliver, 114 SCt 807 (1994); Llewellen v Metro Government of Nashville, 34 F3d 345 (6th Cir 1994); Keith v Highland Park School District, 800 FSupp 1470 (J.Edmunds, ED Mich 1992).

[26] Monell v Department of Social Services, 436 U.S. 685; 98 S.Ct. 2018; 56 L.Ed.2d 611 (1978) (a municipality may be liable under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts may fairly be said to represent official policy, inflicts the injury...").

Such policy or practice may be either one formally adopted or one arising from custom. An act performed pursuant to a custom that has not been formally approved by an appropriate decision maker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.[27] Whether formal or informal, such policy must be promulgated by one who may be fairly characterized as a policy maker.[28]

Such policy or practice must also be unconstitutional on its face or in its application. If not unconstitutional on its face, plaintiff must establish the existence of a de facto unconstitutional practice which is deliberately indifferent to the rights of others.

The test for deliberate indifference is objective. [29] Whether originating in a written policy, or de facto practice, the standard of deliberate indifference sufficient to support a Section 1983 action against a municipality is a stringent standard requiring proof that the government entity disregarded a known or obvious risk.[30]

---

[27] Webster v Houston, 735 F2d 838 (5th Cir 1984) (official policy is a persistent wide-spread practice of city officials or employees, which although not authorized or officially adopted or promulgated policy, is so common in law as to constitute a custom that fairly represents municipal policy; actual or constructive knowledge of such custom must be attributable to the governing body of a municipality or an official to whom that body has validated policy making authority); see also, Benett v City of Slidell, 735 F2d 861 (5th Cir 1984) and 472 US 1016 (1985); Lopez v Houston Independent School District, 871 F2d 351 (5th Cir 1987); Board of the County Commissioners of Bryan County, Oklahoma v Jill Brown et. al., No 95-1100; 1997 Lexis 2793 (April 28, 1997).

[28] Monell v Department of Social Services, 436 U.S. 685; 98 S.Ct. 2018; 56 L.Ed.2d 611 (1978); Pembauer v Cincinnati, 475 U.S. 469 (1986).

[29] Farmer v Brennan, ___US ___, 114 SCt 1970 (1994) (It would be hard to describe the Canton understanding of deliberate indifference, permitting liability to be premised on obvious or constructive notice, as anything but objective. Whether a government official had the requisite knowledge of a substantial risk is a question of fact subject to proof in the usual manners, including circumstantial evidence. It does not matter if the risk arises from a single source, or multiple sources, and it does not matter if the risk is particularized to the individual, or whether the risk is common to all situationed similarly).

[30] Patterson v City of Cleveland, 173 F3d 429 (6th Cir 1999); Hullett v Smiedendorf, 52 F Supp 2d 817 (WD Mich 1999).

In order to be held liable under 42 USC 1983, a municipality's actions or omissions must have been arbitrary in the constitutional sense. Only the most egregious official conduct can be said to be arbitrary in the constitutional sense; the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm. Rather, the policy must be so patently egregious as to shock the conscience.[31]

Further, such policy or practice must embrace a sufficient causal relationship to the asserted deprivation. Congress did not intend to impose liability on a municipality unless deliberate action attributable to the municipality itself is the "moving force" behind the Plaintiff's federal rights deprivation.[32]

Where a policy in some sense causes, but does not compel, a constitutional violation, a plaintiff must establish the particular harm-producing deficiency resulted from conscious choice; they must establish the policy makers deliberately chose measures which would prove inadequate. Before municipal liability may attach, a plaintiff must avail him-or herself of evidence not simply of a decision, but a decision by the city itself to violate the Constitution. Inadequate, but constitutional policies and decisions rise to the same actionable plane only upon a showing they were enacted or

---

[31] County of Sacramento v Lewis, 523 US 833, 118 SCt 1708, 140 LEd2d 1043 (1998) (quoting Collins v Harker Heights, 503 US 115, 112 S Ct 1061, 117 L Ed2d 261 (1992)); Kline v City of Traverse City, 1999 US Dist Lexis 4655 (WD Mich, March 18 1999).

[32] Monell v Department of Social Services, supra at 694; Board of the County Commissioners of Bryan County, Oklahoma v Jill Brown et. al., No 95-1100; 1997 Lexis 2793 (April 28, 1997)., 454 U.S. 312 (1981); Searcy v City of Dayton, 38 F3d 282 (6th Cir 1994) (the challenged policy must be the moving force behind the constitutional deprivation); Gentile v County of Suffolk, 129 F.R.D. 435 (E.D.N.Y. 1990), aff'd926 F.2d 142 (2nd Cir. 1991) (citing City of Canton v Harris, 489 U.S. 378 (1989) (a municipality can be liable under §1983 only where its policies are the "moving force behind the constitutional violation")).

reached with deliberate indifference to their possible unconstitutional consequences.[33] A "but for" causal relationship is insufficient.[34]

Further, a single incident is ordinarily insufficient to establish required causal nexus.[35] Where the custom or practice upon which plaintiff relies is not unconstitutional on its face, considerably more proof than a single incident will be necessary in every case to establish both (a) the requisite fault on the part of the municipality, and (b) the causal connection between the policy/practice and the constitutional deprivation.[36]

Beyond his conclusory assertion that he was denied a variety of constitutionally guaranteed rights as the result of an illusory City policy or practice, Plaintiff fails to identify such policy or practice in any particularized factual manner.

Moreover, although discovery has ended, Plaintiff is without any evidential means of establishing (1) the existence of a constitutionally offensive formal City policy or a constitutionally offensive informal City practice, (2) promulgated or ratified by one who may be fairly characterized as a policy maker, (3) and causally related to the deprivations Plaintiff asserts. Plaintiff has failed to depose Lt. Petersen, or to allow the deposition of Plaintiff, a matter which is the subject of a pending motion by co-defendant. Even if the deposition of Lt. Petersen eventually takes place, it will provide

---

33 Gonzales v Ysleta Independent School District, 996 F.2d 745 (5th Cir. 1993).

34 Pembauer v Cincinnati, 475 US 469, n 11, 482 (1986) ( Although in (Tuttle) there was no opinion for the Court on this issue, both the plurality and concurring opinions found plaintiff's submission inadequate because she failed to establish that the unconstitutional act was taken pursuant to a municipal policy rather than simply resulting from such a policy in a "but for" sense).

35 Oklahoma City v Tuttle, 471 U.S. 808 (1985).

36 Oklahoma City v Tuttle, supra; Hullett v Smiedendorf, 52 F Supp 2d 817 (WD Mich 1999).

absolutely no evidence of an illusory City policy or practice. (See Lt. Petersen's affidavit, Exhibit F). Plaintiffs have a total absence of proofs in this regard necessitating that their claims against the City of Detroit will fail.

In the event Plaintiffs' Complaint can, in some manner, be construed to properly plead a constitutionally offensive policy or practice causally related to Plaintiff's asserted injuries, Plaintiff is without proofs or evidential support of such which is admissible at trial; accordingly, such claims fail to present any genuine issue of material fact.[37]

## CONCLUSION AND RELIEF REQUESTED

Predicated upon the facts presented and the authority cited above, Defendant, City of Detroit respectfully requests this court issue an order granting this defendant Summary Judgment based upon Plaintiffs' failure to present a genuine issue of material fact regarding Plaintiffs' federal constitutional claims. Defendant requests this dismissal be with prejudice and with an award of costs and reasonable attorneys fees incurred in the defense of this lawsuit.

Respectfully submitted,

CITY OF DETROIT LAW DEPARTMENT

Leslie D. Cooper P30857
Attorney for Defendant City of Detroit

Dated: July 8, 2002

---

[37] See, FRCP 56; Street v J.C. Bradford & Co., 886 F2d 1472 (6th Cir 1989); Anderson v Liberty Lobby, Inc, 477 US 242, 106 Sct 2505, 91 Led2d 202 (1986); Celotex Corp., v Catrett, 477 US 317, 106 Sct 2548, 91 Led2d 265 (1986); Matsushita Electric Industrial Co., Ltd. v Zenith Radio Corp., 475 US 574, 106 Sct 1348, 89 Led2d 538 (1986).

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

# SEE CASE FILE FOR ADDITIONAL DOCUMENTS OR PAGES THAT WERE NOT SCANNED